IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HAROLD LEE MORRIS, JR.,

    Petitioner,

v.                                                              No. 06-cv-1052 MV/SMV

JOE ROMERO, Warden;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO; and
ROBERT ULIBARRI, Warden;

    Respondents.[1]

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

1.      This is a proceeding on a petition for writ of habeas corpus under 28 U.S.C. § 2254, filed October 26, 2006. [Doc.1] ("Petition").  On January 12, 2007, Respondents filed their Answer [Doc. 11] ("Answer"), denying Petitioner's claims and arguing, in part, that the petition should be dismissed summarily because it is time-barred.  Petitioner filed a "Response" to Respondents' Answer [Doc. 12] on January 17, 2007, as well as two addenda, the first on January 17, 2007 [Doc. 13], and the second on February 6, 2007 [Doc. 14].  Also before the Court is Respondent's Renewed (i.e., second) Motion to Dismiss.  Respondent's Notice Re:  Briefing and Renewed Motion to Dismiss [Doc. 82] at 2.

2.      Morris is currently incarcerated at the Central New Mexico Correctional Facility in Los Lunas, New Mexico.  Offender Information, NEW MEXICO CORRECTIONS DEPARTMENT, http://corrections.state.nm.us:8080/ofndrsearch/history_detail.do (last visited July 17, 2012).

---

[1] Respondents Romero and the Attorney General were dismissed on August 17, 2007.  Order [Doc. 20].  Only Respondent Ulibarri remains.

Although he is currently proceeding pro se, he was represented by counsel for many of the proceedings since he was indicted, including proceedings and briefing in this Court regarding the present issue of equitable tolling.

## I.  Factual and Procedural Background

3.     Morris was charged with three counts of trafficking cocaine in a grand jury indictment filed October 10, 2001.  State's Response to Amended Petition for Writ of Habeas Corpus [Doc. 11-1] at 26. On February 4, 2002, Dr. Douglas Davis, a psychologist, evaluated Morris to determine whether he was competent to stand trial.  Forensic Psychological Evaluation of Douglas F. Davis, Ph.D., Psychologist [Doc. 11-1] ("Davis Report") at 6.   During that evaluation, Morris demonstrated to Dr. Davis his above average intelligence, his understanding of the charges and possible penalties, pleas available, the significance of a guilty plea, the role of trial participants, and the nature of his collaborative relationship with defense counsel. *Id.* at 6-13.  In his report dated March 28, 2002, Dr. Davis concluded that Morris was competent to stand trial. *Id.* at 13.

4.      On April 19, 2002, Morris entered into a Repeat Offender Plea and Disposition Agreement (State of New Mexico v. Morris, CR-2001-0801, April 19, 2002) [Doc. 11] ("Plea Agreement") at 11–18.   In exchange for the plea agreement, the State agreed not to bring habitual offender proceedings against Morris.  *Id.* at 13.  On September 4, 2002, Morris was sentenced by the Honorable Lourdes A. Martínez (then a state district court judge) to 36 years in prison, followed by a term of two years of probation.  Judgment and Order Partially Suspending

Sentence [Doc. 11] at 7 ("Judgment and Sentence"). Judge Martínez suspended 24 years of the sentence. *Id.*[2]

     5.     Morris did not appeal his conviction. Instead, he filed two motions to reconsider sentence, a state habeas corpus action, and a petition for writ of certiorari to the New Mexico Supreme Court, all of which were denied. *See* [Doc. 11] ex. C through [Doc. 11-3] ex. M.

     6.     On December 16, 2004, and January 28, 2005, Morris was evaluated by a second psychologist, Dr. Eric Westfried.  Retrospective Evaluation of[ ]Competence to Stand Trial of Eric Westfried, Ph.D., clinical Psychologist, dated May 24, 2005 [Doc. 11-1] ("Westfried Report") at 15. Dr. Westfried concluded, retrospectively, that "due to a psychotic episode involving disorganized processing of information Mr. Morris probably was unable to assist defense counsel at the time of entering a plea agreement and at the time of sentencing." *Id.* at 25.

     7.     In his federal habeas petition [Doc.1], Morris originally raised one exhausted claim and two unexhausted claims. *See* Answer [Doc. 11] at 2.  He subsequently amended his petition to delete the two unexhausted claims.  Harold Lee Morris, Jr.'s Notice of Amendment of Petition Pursuant to 28 U.S.C. § 2254 to Delete Unexhausted Claims [Doc. 76].  His sole remaining claim is that he was mentally incompetent at the time he signed his plea agreement. *Id.* at 1–2.

---

    [2] Morris apparently served a portion of sentence, was released on probation, but was subsequently re-incarcerated for a parole violation. *Compare* Harold Lee Morris's Supplemental Brief in Support of Petition Under 28 U.S.C. §[ ]2245 [Doc. 53] ("Petitioner's Supplemental Brief") at 2 (as of December 8, 2009, Petitioner is incarcerated at Doña Ana County Detention Center on suspicion of violating his probation), *with* Respondents' Notice Re:  Order of Probation [Doc. 68] at 2 (Petitioner is released on probation as of June 17, 2010), *and* Harold Lee Morris, Jr.'s Response to Respondent's Motion to Dismiss Filed September 6, 2011 . . . [Doc. 83] (Petitioner is still released on probation as of September 28, 2011), *and* Offender Information, NEW MEXICO CORRECTIONS DEPARTMENT, http://corrections.state.nm.us:8080/ofndrsearch/history_detail.do (last visited July 17, 2012) (Petitioner as incarcerated as of July 17, 2012).

8.     Respondents agree that the one remaining claim is exhausted and that Morris has no available state court remedy.  Answer [Doc. 11] at 2, ¶ 7.  However, Respondents argue, *inter alia*, that Morris's petition is time-barred because it was filed significantly outside the one-year limitation period provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA") Pub. L. No. 104-132, § 101, 110 Stat. 1321 (codified at 28 U.S.C. § 2244(d)).   *Id.* at 2. Alternatively, Respondents assert that Morris has not shown that the state proceedings either (a) resulted in a decision that was contrary to, or involved an unreasonable application of, federal law as determined by the United States Supreme Court, or (b) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in state court proceedings.  *Id.* at 3–4 (citing 28 U.S.C. § 2254(d)).

9.     On December 29, 2008, the Honorable Don J. Svet, United States Magistrate Judge, filed his Proposed Findings and Recommended Disposition [Doc. 23] ("PF&RD").  He found that:  (a) the petition was time-barred under the AEDPA, and (b) nothing in the pleadings indicated that equitable tolling was appropriate.  *Id.*

10.     On January 13, 2009, Morris filed timely objections to Judge Svet's PF&RD. Petitioner's Objections [t]o Proposed Findings [a]nd Recommended Disposition [Doc. 24] ("Objections").  He argued that equitable tolling was appropriate in his case because he was mentally incompetent for much of time between his sentencing and the filing of his federal habeas petition.  *Id.*

11.     On April 1, 2009, the Honorable Martha Vázquez, United States District Judge, issued an order directing Judge Svet to appoint counsel for Morris and to hold an evidentiary

4

hearing, if warranted, on the one claim raised in Morris's objections, i.e., whether he was entitled to equitable tolling because of mental incompetency.  Order of Reference [Doc. 25].

12.     Judge Svet appointed attorney Scott M. Davidson to represent Morris on April 20, 2009.  CJA Appointment of and Authority to Pay Court Appointed Counsel [Doc. 28].

13.     Judge Svet held an evidentiary hearing on August 9, 2009.  Transcript of Evidentiary Hearing [Doc. 51].  Morris, the only witness called at the hearing, attended in person and testified at length regarding his alleged mental incapacity and his lack of access to legal materials.  *Id.* at 9–77.  Judge Svet ordered the parties to submit briefs on the issue of equitable tolling after the transcript of the hearing became available.  *Id.* at 77–78.

14.     Morris's counsel submitted his brief on December 8, 2009.  Petitioner's Supplemental Brief [Doc. 53].  He argued that equitable tolling was appropriate for two reasons: first, due to Morris's mental incompetency, and second, due to Morris's lack of access to legal books and materials while held at the Doña Ana County Mental Health Treatment Unit, an argument not raised in Petitioner's Objections.  *Compare id. with* Objections [Doc. 24].

15.     Judge Vázquez referred this matter to the undersigned on March 3, 2012, due to Judge Svet's retirement.  Order of Reference [Doc. 85].

## II. <u>Analysis</u>

16.     I set forth the following chronology to evaluate Respondents' argument that Morris's § 2254 petition was filed outside the one-year limitation period:[3]

| | | |
|---|---|---|
| a. | March 28, 2002: | Davis Report (finding Morris competent to stand trial). |
| b. | September 4, 2002: | Judgment and Order Partially suspending sentence filed. |
| c. | October 4, 2002: | 30-day deadline for appealing conviction; none taken. |
| d. | October 7, 2002: | 1st Motion to Reconsider Sentence filed (by counsel). |
| e. | October 22, 2002: | 1st Motion to Reconsider Sentence denied. |
| f. | January 17, 2003: | 2nd Motion to Reconsider Sentence filed (pro se). |
| g. | February 5, 2003: | 2nd Motion to Reconsider Sentence denied. |
| h. | February 23, 2004: | State Habeas Petition filed (pro se) |
| i. | April 22, 2004: | Order appointing appellate counsel filed. |
| j. | May 24, 2005: | Westfried Report (retroactively finding Morris mentally incompetent at time of plea and sentencing). |
| k. | July 29, 2005: | Amended State Habeas Petition filed (by counsel). |
| l. | August 22, 2006: | State Habeas Petition denied. |
| m. | September 18, 2006: | Petition for Writ of Certiorari filed (NM Supreme Court). |
| n. | October 5, 2006: | Petition for Writ of Certiorari denied. |
| o. | October 26, 2006: | Federal Habeas Petition filed. |

---

[3] The dates are gleaned from the pleadings and other documents attached as exhibits to Respondents' Answer. [Docs. 11-1 to 11-3].

## A. <u>Statutory Tolling</u>

17.      AEDPA amended federal habeas corpus procedures by adding a one-year limitation period for § 2254 petitions.  *Pliler v. Ford*, 542 U.S. 225, 230 (2004).  AEDPA became effective on April 24, 1996.  *Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999).  Morris was convicted and sentenced after this date, and his federal habeas petition is therefore subject to AEDPA's one-year limitation period.

18.      28 U.S.C. § 2244(d)(1)(A) provides that the one-year limitation period begins to run from the date on which the judgment of conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."

19.      The AEDPA one-year limitation period is subject to tolling as set forth in 28 U.S.C. § 2244(d)(2):  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  The Tenth Circuit Court of Appeals has determined that the pendency of a state post-conviction application "encompass[es] all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies . . . ."  *Barnett v. LeMaster*, 167 F.3d 1321, 1323 (10th Cir. 1999).  "[R]egardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law."  *Serrano v. Williams*, 383 F.3d 1181, 1184 (10th Cir. 2004) (internal quotation marks omitted).

20.      Rule 12-201(A)(2) of the New Mexico Rules of Appellate Procedure provides that parties must file an appeal within 30 days of a state district court's judgment.  *Holloway v.*

*Hatch*, No. 07-2092, 250 F.App'x 899, 900, 2007 WL 2981423 at *1, (10th Cir. Oct. 12, 2007) (unpublished).  Thus, Morris's judgment became final on October 4, 2002, 30 days after entry of the Judgment and Sentence on September 4, 2002.  He then had one year, or until October 4, 2003, in which to file his federal habeas petition, subject to tolling.

21.    Although Morris did not appeal his conviction, he did file two motions for reconsideration of his sentence. [First] Motion to Reconsider Sentence [Doc. 11] at 19–20; [Second] Motion to Reconsider Sentence [Doc. 11] at 23–24.  Under Tenth Circuit precedent, the one-year time period in which to file a federal habeas petition is tolled during the pendency of a properly filed motion to modify the sentence.  *See Howard v. Ulibarri*, 457 F.3d 1146, 1148 (10th Cir. 2006).

22.    Here, Morris was permitted 90 days after entry of the Judgment and Sentence to file a motion to modify his sentence.  *See* Rule 5-801(B) NMRA.  His first Motion to Reconsider Sentence, filed on October 7, 2002, was properly filed within this 90-day time period, and thus the time limit for filing his federal habeas petition was tolled *during the pendency* of that motion. *See Howard*, 457 F.3d at 1148.  The motion was denied 15 days later on October 22, 2002. Order Denying [First] Motion to Reconsider Sentence [Doc. 11] at 21. Morris had 30 days in which to appeal that ruling.  *See* Rule 12-201(A)(2) NMRA.  Thus, I find that the first Motion to Reconsider Sentence was "pending" for a total of 45 days.  The federal habeas deadline, therefore, was running between October 5, 2002 and October 6, 2002.  However, it was tolled from October 7, 2002—the date on which he filed his first Motion to Reconsider—until November 22, 2002—the last day on which he could appeal the denial of the motion.

23.     Morris, however, asserts that the federal habeas deadline did not begin running on October 3, 2002 but, instead, began running on November 22, 2002.  He argues that since he was allowed 90 days in which to file his Motion to Reconsider Sentence, and since he did so within that 90-day period, the AEDPA time period did not begin to run until 30 days after the first motion was denied.  Petitioner's Supplemental Brief [Doc. 53] at 6–11.  That is incorrect.  He conflates the time-tolling provision of § 2244(d)(1)(A) (time period tolled until conclusion of direct review or the expiration of the time for seeking such review), with that of § 2244(d)(2) (time period tolled only during the pendency of a properly filed application for post-conviction or other collateral review).  Under the former, the one-year AEDPA limitation period is tolled during the time allowed for direct appeal, *whether or not an appeal is taken*.  But under the latter, the limitation period is tolled only *during the pendency* of a properly filed application for collateral review.  Accordingly, I find that the AEDPA limitation period was running between the date that Morris's judgment became final and the date he filed his first Motion to Reconsider.

24.     Morris argues that the AEDPA limitation period was tolled again during the pendency of his second Motion to Reconsider Sentence, filed on January 17, 2003.  Petitioner's Supplemental Brief [Doc. 53] at 11–13.  Counsel for Respondents seems to agree.  *See* [Doc. 58] ("Respondent's Supplemental Brief") at 6.  Both misconstrue the application of § 2244(d)(2).  That section applies only in the case of a "properly filed" application for collateral review of the sentence. 28 U.S.C. § 2244(d)(2).  Morris's second Motion to Reconsider Sentence was not "properly filed" because it was untimely.  *See Habteselassie v. Novak*, 209 F.3d 1208, 1210–11 (10th Cir. 2000) (holding that improperly filed motions, such as those that are untimely, do not trigger tolling).  It was filed more than 90 days after entry of the Judgment and Sentence and was

9

denied on that ground.  Order Denying [Second] Motion to Reconsider Sentence [Doc. 11] at 25.

Because Morris's second motion to reconsider sentence was not "properly filed," it did not toll

the one-year AEDPA limitation period.

25.     Thus, to summarize at this point, I find that the one-year AEDPA limitation

period began to run on October 5, 2002, the day after his deadline for filing a direct appeal of his

conviction.  Therefore, not accounting for any statutory tolling, Morris had until October 5,

2003, to file in federal court.  The federal deadline ran for two days, from October 5, 2002 to

October 7, 2002, when it was statutorily tolled by the filing of his first Motion to Reconsider

Sentence.  The deadline remained tolled until November 21, 2002, or for 45 days, during the

pendency of the first Motion to Reconsider Sentence.  Adding the 45 days of statutory tolling to

the October 5, 2003 deadline, Morris had until November 19, 2003, to file his federal habeas

petition, subject to equitable tolling.

## B.   Equitable Tolling

26.     The Tenth Circuit Court of Appeals has applied equitable tolling in § 2254 cases

only in "rare and exceptional circumstances."  *York v. Galetka*, 314 F.3d 522, 527 (10th Cir.

2003); *see also Boyd v. Ward*, No. 02-6134, 56 F.App'x 849, 851, 2002 WL 31772012, at *2

(10th Cir. Dec. 12, 2002) (unpublished) (equitable tolling available only in "rare and exceptional

circumstances" and where inmate "diligently pursue[d] his claims and demonstrate[d] that the

failure to timely file was caused by extraordinary circumstances beyond his control") (internal

quotation marks omitted).

27.     Equitable tolling is justified only when:  (1) "a constitutional violation has

resulted in the conviction of one who is actually innocent or incompetent," *Miller v. Marr*, 141

F.3d 976, 978 (10th Cir. 1988), (2) "an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing," or (3) "a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period," *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

28.     To justify equitable tolling, Morris has the burden of demonstrating that his failure to timely file was caused by extraordinary circumstances that stood in his way. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Miller*, 141 F.3d at 978 (refusing to apply equitable tolling where petitioner provided no specificity regarding the steps he took to diligently pursue his federal claims). "An inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)).

29.     In Morris's Objections to Proposed Findings and Recommended Disposition, filed pro se, he raises only one argument for equitable tolling: that he was incompetent during much of the earlier proceedings because of chronic mental illnesses. *See* Objections [Doc. 24]. He argues that since he was "probably incompetent" from September, 2001, until "about June 2004," there are "exceptional circumstances that warrant equitable tolling in this case." *Id.* at 2, 1, 2. His objections do not mention lack of access to legal materials. *Id.* at 1–3.

### i. <u>Mental Incompetency</u>

30.     The evidence regarding Morris's alleged incompetency is vague, confusing, and at times directly contradictory. For example, in a report dated March 28, 2002 (22 days before Morris's plea agreement), Dr. Davis, a psychologist hired by Morris's defense counsel, reported:

> Mr. Morris suffers from long-standing mood and cognitive disorders. Each of these conditions appears to meet the statutory

11

> definition of a mental illness for a finding of [guilty but mentally ill], i.e., "a substantial disorder of thought, mood, or behavior that can impair his judgment in emotionally charged situations, but not to the extent that he does not know what he is doing, or understand the consequences of his actions, or know that [h]is actions are wrong, or cannot prevent himself from committing such actions." . . . His ability to form a specific intent was probably not impaired, and he was probably not legally insane, during the time in question.

Davis Report [Doc. 11-1] at 12–13.

31.    On the other hand, on May 24, 2005, Dr. Westfried, also hired by Morris's counsel, found that Morris was probably suffering a "psychotic episode" at the time of his plea agreement and sentencing.  Westfried Report [Doc. 11-1] at 14–25.

32.    At the evidentiary hearing before Judge Svet, Morris's testimony was equally confusing.  Under questioning by his court-appointed counsel, he testified that during the time periods in question (more on that below), he suffered from "serotonin syndrome," which he described as "a natural level of serotonin within the brain that causes symptoms of disorientation, inability to accurately gauge the passage of time, confusion, and strange behavior similar to a psychotic episode, however not the same."  Transcript of Evidentiary Hearing [Doc. 51] at 14.  It is important to note, however, that neither Dr. Davis nor Dr. Westfried makes any mention of "serotonin syndrome" in his report. *See* Davis Report [Doc. 11-1] at 6–13; Westfried Report [Doc. 11-1] at 14–25.

33.    When Judge Svet questioned how Morris could remember specifics of his incarceration so clearly after more than six years, given that the "serotonin syndrome" caused "disorientation" and "confusion," Transcript of Evidentiary Hearing [Doc. 51] at 14, 22–23,

Morris testified, "Because, although my performance was affected, my memory was not," *id.* at 23.

34.    The time period or periods when Petitioner claims to have been mentally incompetent is equally unclear.  At the evidentiary hearing, Petitioner's counsel limited his questioning to two time periods:  from November 21, 2002 to January 17, 2003, and from February 5, 2003 to February 23, 2004.  *See id.* at 4, 9–37 (first time period); 6, 37–41 (second time period).  Although Petitioner claimed to have been incompetent throughout the entire first period (or at least his testimony can be read that way), he claimed to be incompetent for only a two week portion of the second time period.  When questioned by his counsel about his mental state on February 13, 2003, the date on which he claims to have received the order denying his second motion to reconsider sentence, Morris testified, "I was in one of my—having one of my episodes [due to the serotonin syndrome], and I didn't open it for approximately two weeks after I received it . . . ."  Transcript of Evidentiary Hearing [Doc. 51] at 40.  Upon further questioning, he testified:

> Q.    So would it be fair to say that, for a period of two weeks after February 13th, 2003, when you received notice of the denial of your second motion to reconsider, that you were, due to psychological impairment, unable to read it and process it?
> A.    Yes. I don't even recall why I hadn't opened it.

*Id.* at 40.  Petitioner bases his argument for equitable tolling for the remainder of the second time period on lack of access to legal materials, not on mental incompetency.  *See* Transcript of Evidentiary Hearing [Doc. 51] at 10–12, 19, 26–27, 32–47.

34.    Petitioner's testimony regarding the second time period is inconsistent with a pleading he filed in connection with his federal habeas petition. On January 15, 2007,

approximately two years and seven months prior to the evidentiary hearing before Judge Svet, Petitioner filed an Addendum to Response to State's Answer to Habeas Petition [Doc. 13].  In that Addendum, Petitioner sought to clarify when he was and when he was not claiming he was incompetent for purposes of equitable tolling.  His Addendum states:

> Petitioner humbly states that the state habeas corpus [petition] was filed immediately after petitioner regained competence. *Competence was regained around the time of the filing of the second motion for reconsideration of sentence.*

[Doc. 13] (emphasis added).   The second Motion to Reconsider Sentence was filed on January 17, 2003, one month before his claimed two-week period of incompetency.  [Doc. 11] at 23.[4]

35.    Petitioner gave vague, confusing and conflicting testimony regarding how badly he was impaired by the serotonin syndrome.  Giving his testimony a fair reading, it sounds as though the physicians at the Mental Health Unit were trying different medications, with varying degrees of success:  Prolixin and Ativan made him groggy for two weeks, but Ativan would "interrupt" his "serotonin syndrome."  Transcript of Evidentiary Hearing [Doc. 51] at 15–16, 20.  Zoloft made him feel "irritable and grouchy."  *Id.* at 17.  Remeron and Risperdal "slowed [him] down quite a bit."  *Id.* at 16.  Geodon made it difficult for him to concentrate and made him sleep more than usual.  *Id.*  Zyprexa had no effect.  *Id.*  Paxil and Prozac made him feel better, or "normal," at least for a while.  *Id.* at 17.  In response to a question about how his lack of sleep (allegedly caused by some or all of his medications), Petitioner testified:

---

[4] I note that the second Motion to Reconsider, which was filed pro se, is concise, cogent, and coherent. It is also neatly typed, despite Petitioner's testimony that he "never had access to a typewriter," Transcript of Evidentiary Hearing [Doc. 51] at 26, and that "all of [his] filings have been handwritten," *id.* at 72.

> I could write, but it mainly affected my thought processes. I was very hyperactive. It was a manic type situation, and being, I guess, distracted by thoughts that were moving very fast, I was basically unable to complete anything if I were having a full-blown serotonin syndrome episode; however, there were periods of, I would say, between one to three months at—during those times that I was performing normally and was ultimately able to assemble a petition.

*Id.* at 21–22. Petitioner's testimony, even if believed, does not support a finding that he was mentally incompetent during the entire time periods claimed. At best, it suggests that he had good days and bad days. I am left to speculate as to when those bad days occurred and how bad they were. In any event, I find that Morris's testimony is insufficient to support a finding of "exceptional circumstances" necessary to justify equitable tolling.

36.     Finally with respect to Petitioner's claim of mental incompetency, I note that Petitioner did not submit a single page of medical records in support of his claim, *id.* at 55, even though he concedes that "the records should be easily available through the Corrections Department." *Id.* Morris's argument that he was mentally incompetent is based solely on his alleged "serotonin syndrome," *see id.* at 13–40, and counsel's argument in Petitioner's Supplemental Brief [Doc. 53] at 36–47, 51–52. At the evidentiary hearing before Judge Svet, Morris's counsel questioned him at length about his affliction, for example,

> Q.     Mr. Morris, if I could direct your attention back to the serotonin syndrome, can you explain for us what serotonin syndrome is and what it—how it affects you when you're experiencing it?
> A.     It's defined as a natural level of serotonin within the brain that causes symptoms of disorientation, inability to accurately gauge the passage of time, confusion, and strange behavior similar to a psychotic episode, however not the same.

15

Transcript of Evidentiary Hearing [Doc. 51] at 14.  There is absolutely nothing in the record supporting Morris's claim that he did, in fact, suffer from serotonin syndrome, or that his description of the symptoms is accurate.  The diagnosis does not appear in the Davis Report, [Doc. 11-1] at 6–13, nor the Westfried Report, *id.* at 14–25.  It bears emphasizing that Dr. Westfried evaluated Morris—and reviewed his medical records—in late 2004 and early 2005, i.e., well after the time periods during which Morris claims to have been rendered incompetent by the serotonin syndrome.  *Id.* at 14 (date of report), 15 (review of medical records).  Morris makes no effort to explain why the diagnosis does not appear in Dr. Westfried's report.  Nor does he explain why no expert was called (either Dr. Westfried or, better yet, a treating physician) at the evidentiary hearing before Judge Svet.  We are left with Morris's testimony—eight to nine years after the fact—on the following issues:

- Is there such a thing as serotonin syndrome?

- If so, did Morris suffer from it?

- If he did suffer from it, did it render him mentally incompetent?

- And if it did, when and for how long was he incompetent?

Morris bears "the strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Yang*, 525 F.3d at 928 (internal quotation marks omitted).  I find that he has not met this burden.

37.     Taking all of the above into consideration, and having read the transcript of the evidentiary hearing as well as the pleadings and briefs subsequently submitted by the parties, I find that Petitioner's testimony, without any supporting medical records, reports, or expert

testimony, is insufficient to establish that he was mentally incompetent at any time during the one-year AEDPA limitation period.

38.    However, even if Petitioner is given the benefit of the doubt regarding his claim of mental incompetency, his habeas petition is still time-barred under the AEDPA.  Assuming *arguendo* that Petitioner was mentally incompetent between November 21, 2002 and January 17, 2003 (57 days) and again for another two-week period sometime after February 13, 2003 (14 days)—as he alleges—that would toll the limitation period for a total of 71 days, or until January 29, 2004.  Petitioner's state habeas action was not filed until Feb 23, 2004.  State Habeas Petition [Doc. 11-2] at 9.[6]   In other words, even if I were to find that Petitioner had been mentally incompetent during the time periods claimed, and even if I were to find that such incompetency triggered equitable tolling, the petition would still be time-barred because the deadline to file it was January 29, 2004.

39.    That Petitioner filed a state-habeas claim on February 23, 2004, does not change the January 29, 2004 federal habeas deadline.  If the federal deadline had not yet passed, the state-habeas petition would have tolled it; but once expired, the time period for Petitioner to file in federal court was not revived by the filing of the state-habeas petition.  *See Fisher v. Gibson*, 262 F.3d 1135, 1142–43 (10th Cir. 2001) (no statutory tolling where state post-conviction proceedings were initiated *after* the AEDPA deadline).

---

[6] Petitioner argues that the state habeas action should be considered "filed" as of February 2, 2004, the date Petitioner signed it and purportedly mailed it to his father for filing.  Petitioner's Supplemental Brief [Doc. 53] at 14–16.  Respondents argue against the application of the "prison mailbox rule" because the pleading was mailed to Petitioner's father, rather than to the court.  Respondent's Supplemental Brief [Doc. 58] at 17–18.  The Court need not resolve that issue because whether the pleading was mailed on February 2 or February 23, 2004, it was still too late to toll the AEDPA limitation period, which ran, at the very latest, on January 29, 2004.

40.     To summarize my findings on the issue of Petitioner's alleged incompetency, I find that Petitioner has failed to show that he was mentally impaired to the extent such impairment would constitute the type of "rare and exceptional circumstance" necessary to justify equitable tolling.   Alternatively, I find that even if Petitioner had been mentally incompetent during the two time periods argued, the deadline for him to file his federal habeas action would have been tolled until January 29, 2004, at the latest.   Because Morris did not file until February 23, 2004, the federal petition would still have been time-barred.   Thus, his petition should be denied.

## ii. Lack of Access to Legal Materials

41.     As mentioned, Morris did not object to Judge Svet's PF&RD on grounds of lack of access to legal materials.  *See* Objections [Doc. 24].   Arguably, therefore, the claim has been waived.  *Cf. United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059–60 (1996) (holding that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review).   Nevertheless, I will address Morris's claim that his lack of access to legal materials justifies equitable tolling.

42.     The Tenth Circuit has repeatedly declined to find equitable tolling warranted where habeas petitioners allege that the legal facilities in prisons are inadequate and/or that the law library lacks a copy of AEDPA.  *See, e.g.*, *Berry v. Ray*, No. 06-6375, 229 F.App'x 697, 700, 2007 WL 1068117 at *3 (10th Cir. April 11, 2007) (unpublished) (alleging no law library); *Bisner v. Clark*, No. 06-4234, 217 F.App'x 772, 774, 2007 WL 521234 at **1–2 (10th Cir. Feb. 21, 2007) (unpublished) (alleging no law library and no knowledge of the limitation period);

*Alexander v. Watkins*, No. 02-1171, 49 F.App'x 770, 772, 2002 WL 31265956 at *1 (10th Cir. Oct. 9, 2002) (unpublished) (alleging illiteracy and no AEDPA information in library without supporting evidence).  While the Tenth Circuit has not explicitly foreclosed the possibility that a lack of access to library materials could be a basis for equitable tolling, *Garcia-Dominguez v. Mahaffey*, No. 01-6096, 17 F.App'x 827, 828, 2001 WL 920286 at *1 (10th Cir. Aug. 15, 2001), I could find no case in which the Tenth Circuit has applied the doctrine to such a circumstance. *See Alexander*, 49 F.App'x at 772 (stating that the petitioner's "conclusory declarations about conditions in the prison library are the only support for his allegations [that the library does not contain AEDPA or information about AEDPA] and, as such, are insufficient to establish the existence of an extraordinary circumstance sufficient to support equitable tolling."); *Gibson*, 232 F.3d at 808 ("[A] claim of insufficient access to relevant law, such as AEDPA, is not enough to support equitable tolling."); *Miller*, 141 F.3d at 978 ("It is not enough to say that the Minnesota facility lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate.").

43.    Here, Petitioner does not really allege total lack of access to legal materials, but rather that being in the Mental Health Treatment Center made it more difficult for him to gain access to such materials.  "During that time period, I had absolutely no access to legal materials; however, I was able to request specific material through the Supreme Court law library or the paralegal Legal Access Office on the prison grounds . . . ."  Transcript of Evidentiary Hearing [Doc. 51] at 10.  He testified that availing himself of the legal services mentioned caused him some difficulty, primarily delay. *Id.*  However, I find that the difficulties Morris described in this

testimony at the evidentiary hearing do not rise to the level of "rare and exceptional circumstances" necessary to justify equitable tolling.[7]

44.     However, Morris also makes a more serious claim, i.e., that his legal paperwork was confiscated by prison officials on several occasions.  *See*, *e.g., id.* at 12–13.  The Tenth Circuit has held that "the intentional confiscation of a prisoner's habeas petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law."  *Unites States v. Gabaldon*, 522 F.3d 1121, 1125 (10th Cir. 2008) (quoting *Valverde v. Stinson*, 224 F.3d 129, 133–34 (2d Cir. 2000)).

45.     However, most of these instances of confiscation purportedly occurred[8] between November 22, 2002, and January 17, 2003.  Transcript of Evidentiary Hearing [Doc. 51] at 32.  Indeed, in his Supplemental Brief, Petitioner argues:

> The combination of lack of adequate access to legal materials and confiscation of legal paperwork warrants equitable tolling for the 56-day period from November 22, 2002 to January 17, 2003.

---

[7] *See, e.g., Gifford v. Everett*, No. 00-8091, 28 F.App'x. 748, 751, 2001 WL 1117074 at * 2 (10th Cir. Sept. 24, 2001) (unpublished) (nearly six months of lockdown in prison and inmate's back problems not sufficient to trigger equitable tolling, especially where inmate failed to show diligence in pursuing his remedies); *Johnson v. Saffle*, No. 00-5210, 12 F.App'x. 864, 867, 2001 WL 661144 at * 3 (10th Cir. June 13, 2001) (unpublished) ("Inability to access legal materials for a period of thirty days does not meet the threshold of 'rare and exceptional circumstances.' Moreover, Mr. Johnson does not offer an adequate explanation for his delay when he was not in lockdown.") (internal citation omitted); *Pfeil v. Everett*, No. 01-8003, 9 F.App'x. 973, 978, 2001 WL 618209 at *4 (10th Cir. June 6, 2001) (unpublished) (no equitable tolling where inmate failed to show that lockdown—even when it caused delay in obtaining legal materials—was not reasonably related to legitimate penological interests); *United States v. Sterling*, No. 99-6161, 1999 WL 1020855 at *1 (10th Cir. Nov. 10, 1999) (unpublished) ("Inability to access legal materials for a period of thirty one days does not rise to the level of 'rare and exceptional circumstances.'" (citing *Wright v. Smith*, No. 98-6324, 1999 WL 92283 (10th Cir. Feb. 24, 1999) (unpublished)); *Sanchez v. Lytle*, No. 98-2086, 1998 WL 873064 at *2 (10th Cir. Dec. 16, 1998) (unpublished) (no equitable tolling where inmate was transferred to another state for five months and allegedly had no legal materials for seven months because inmate's own lack of diligence, rather than lack of access to legal materials, prevented his timely state habeas petition ).

[8] I use the word "purportedly" because there is no documentation supporting Petitioner's assertion. Although he testified that he filed a grievance in connection with the confiscations, he claims that none of the grievances he filed in 2002 and 2003 was logged.  Transcript of Evidentiary Hearing [Doc. 51] at 62.

Petitioner's Supplemental Brief [Doc. 53] at 36.  This is the first time period in which Petitioner claims he was mentally incompetent.  *See* paragraphs 27–36, *supra*.  As described above, even if I were to find that equitable tolling is justified during this period, Petitioner's federal habeas petition would still time-barred under the AEDPA.  *See* paragraphs 23–26, *supra*.

46.     Morris also claims that the paperwork for his state habeas action was confiscated for a third time in March of 2003. Transcript of Evidentiary Hearing [Doc. 51] at 11–12.  He claims that his habeas packets were confiscated just as he had them "mostly filled out."  *Id.* at 12. And yet he did not file his state habeas action until February 23, 2004, more than eleven months later.  State Habeas Petition [Doc. 11-2] at 9.  Equitable tolling is available only when the petitioner shows that he has diligently pursued his claims.  *E.g. Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).  I find that the record fails to demonstrate sufficient diligence on Petitioner's part to justify equitable tolling on these grounds.[9]

## C.  The Merits of the Petition

47.     Having found that the petition is time-barred under the AEDPA, I need not address the merits of the petition.  However, having reviewed the pleadings in this matter in great detail, I find that in the event the petition is not time-barred, it should nevertheless be denied on its merits.

---

[9]  *See, e.g., Boyd v. Simmons*, No. 05-3083, 165 F.App'x. 580, 583, 2006 WL 218198 at * 2 (10th Cir. Jan. 30, 2006) (unpublished) (inmate's attempts to "pursue his legal claims, either through the request for legal advice or relevant legal materials" did not "rise to the level required for the extraordinary relief of equitable tolling."); *United States v. Tafoya*, No. 05-2092, 164 F.App'x. 700, 701–02, 2006 WL 148278 at **1–2 (10th Cir. Jan. 20, 2006) (writing three letters to attorney did not amount to diligent pursuit of claims and, therefore, equitable tolling did not apply); *United States v. Stutson*, No. 00-6031, 4 F.App'x. 569, 570–71, 2001 WL 91414 at **1–2 (10th Cir. Feb. 2, 2001) (no equitable tolling where inmate alleged that his attorney failed to relinquish legal papers and alleged that inmate's own mother misplace legal papers because inmate failed to show necessary diligence to justify the extraordinary equitable relief).

48.     The provisions of 28 U.S.C. § 2254(d), as amended by AEDPA govern this case. The Court cannot grant habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in a petitioner's state court proceeding:   (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)–(2).

49.     The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

50.     Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law."  *Williams*, 529 U.S. at 413.  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.*

51.     Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must

22

be *objectively* unreasonable."   *Lockyer*, 538 U.S. at 75–76 (emphasis added) (citation and internal quotation marks omitted).

52.     Here, Morris claims that he is entitled to relief because he was mentally incompetent when he entered into his plea agreement.  [Doc. 1] as amended by [Doc. 76].  This claim was argued and fully briefed by Morris's counsel in his state habeas action, [Doc. 11-1] at 1–5, and later in his Petition for Writ of Certiorari in the Supreme Court of the State of New Mexico, [Doc. 11-2] at 1–8.

53.     On February 4, 2002, two months before he entered into his plea agreement, Dr. Davis evaluated Morris and found him competent to stand trial.  Davis Report [Doc. 11-1] at 6–13.

54.     Morris entered his guilty plea on April 19, 2002.  Plea Agreement [Doc. 11] at 11–18.  His court-appointed attorney, Charlee Elliott, believed he was competent.  *See* Petition for Writ of Certiorari in the Supreme Court of the State of New Mexico [Doc. 11-2] at 5 (summarizing Charlee Elliott's testimony at evidentiary hearing on State Petition for Habeas Corpus); *see also* Order Denying Defendant's Petition for Writ of Habeas Corpus [Doc. 11-3] at 19, ¶ 5 ("Defense counsel Charlee Elliott believed her client was competent to enter a plea and competent to receive sentence.").

55.     There is no suggestion that the Honorable Lourdes Martínez believed Morris to be incompetent when she accepted his plea agreement and sentenced him.  Plea Agreement [Doc. 11] at 11–18; Judgment and Sentence [Doc. 11] at 5–10.  Judge Martínez meticulously checked off and initialed that Morris understood his constitutional rights, that his plea was

23

voluntary, and that he "knowingly, voluntarily and intelligently [pled] guilty" to the charges against him.  Plea Agreement [Doc.11] at 17.

56.     Attorney Stephen Ryan, who represented Morris in connection with his first motion to reconsider sentence, never raised the issue of competency during his representation of Morris, nor did he raise it as a ground for his motion to reconsider.  *See* [First] Motion to Reconsider [Doc. 11] at 19–20.

57.     Dr. Westfried evaluated Morris nearly three years after he pled guilty.  Westfried Report [Doc. 11-1] at 14.  Dr. Westfried concluded, retrospectively, that Morris "probably was unable to assist defense counsel at the time of entering a plea agreement and at the time of sentencing." *Id.* at 25. Thus, there was conflicting evidence on Morris's mental competency.

58.     Judge Cano-Garcia, the state district court judge who heard Morris's state habeas petition, held an evidentiary hearing on July 28, 2006.  Order Denying Defendant's Petition for Writ of Habeas Corpus [Doc. 11-3] at 18.  The witnesses at that hearing included Dr. Davis, Dr. Westfried, and Morris's defense counsel, Attorney Charlee Elliott.  Petition for Writ of Certiorari in the Supreme Court of the State of New Mexico [Doc. 11-2] at 3–5.  They all testified at length regarding Morris's competency at the time of his plea and sentencing.  *Id.*

59.     After hearing the testimony and considering the briefs submitted by Morris's counsel and the state, Judge Cano-Garcia concluded, in pertinent part:

    4.     On February 4, 2002, Dr. Douglas Davis, Psychologist, evaluated the defendant and found him competent to stand trial.

    5.     Defense counsel Charlee Elliott believed her client was competent to enter a plea and competent to receive sentence.

    6.     Defendants may gain and lose competency.

7.     Defendant was subsequently evaluated in prison on December 16, 2004 by Dr. Eric Westfried [who found that] the defendant was probably not competent to enter a guilty plea on April 19, 2002.

8.     Dr. Davis' evaluation was conducted in close temporal proximity to defendant[']s plea and sentencing hearings.  This report likely represents a more accurate account of defendant[']s mental state in April and September of 2002 than [Dr. Westfried's] testing performed on December 16, 2004.

9.     Defendant was competent at the time he entered a change of plea and at the time of sentencing.

Order Denying Defendant's Petition for Writ of Habeas Corpus [Doc. 11-3] at 19.

60.     Essentially, Petitioner asks this Court to find that Judge Cano-Garcia got it wrong.

He argues in his federal habeas petition:

> Petitioner was . . . evaluated by Dr. Eric Westfried, a noted Forensic Neuropsychologist in three sessions totaling over 20 hours and was found to have been incompetent around the time [the] plea was accepted.  It is unclear why [J]udge Cano-Garcia chose to honor the results of Dr. Davis when it is evident that Dr. Westfried's evaluation was much more thorough and complete.

[Doc. 1] at 14.  The answer to Petitioner's question is that, after weighing the evidence before her including the testimony of Dr. Davis, Dr. Westfried, and Attorney Elliott, Judge Cano-Garcia found that Dr. Davis's report "likely represents a more accurate account of [Morris's] mental state" at the time of his plea agreement and sentencing because Dr. Davis's evaluation was conducted in much closer temporal proximity to the plea agreement and sentencing than was Dr. Westfried's.  Order Denying Defendant's Petition for Writ of Habeas Corpus [Doc. 11-3] at 19. Morris's petition amounts to little more than a request that this Court second-guess the state court's weighing of the evidence.  That, of course, is not the federal habeas standard.

61.     I find that Morris has failed to show that the decisions of the state courts were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)–(2).

62.     For the reasons stated above, I find that Morris's federal habeas petition is time-barred and, alternatively, that Morris has failed to show a federal constitutional violation in accordance with 28 U.S.C. § 2254(d).

### Recommended Disposition

I recommend that Petitioner's § 2254 Petition [Doc 1] as amended by [Doc. 76] be **DENIED** and that this action be **DISMISSED with prejudice**.  I further recommend that Respondent's Renewed Motion to Dismiss [Doc. 82] at 3 be **GRANTED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**